AUSAs: Maggie Lynaugh & Adam Sowlati

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTIAN ROSADO GARCIA and LUIS PAULINO,<br><br>Defendants. | **23 Mag. 7484**<br><br>**COMPLAINT**<br><br>Violations of 21 U.S.C. §§ 841, 846; 18 U.S.C. § 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

SHAUN MENTON, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Conspiracy to Distribute Narcotics)

1. From at least in or about September 2023 until December 7, 2023, in the Southern District of New York and elsewhere, CHRISTIAN ROSADO GARCIA and LUIS PAULINO, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that CHRISTIAN ROSADO GARCIA and LUIS PAULINO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Possession with Intent to Distribute Narcotics)

4. On or about December 7, 2023, in the Southern District of New York and elsewhere, CHRISTIAN ROSADO GARCIA and LUIS PAULINO, the defendants, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

5. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Task Force Officer with the Drug Enforcement Administration ("DEA"). I have been a Task Force Officer with the DEA for approximately three years. I have been personally involved in this investigation. This affidavit is based on my involvement in this investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

7. Since at least in or about September 2023, members of law enforcement have been investigating a drug trafficking operation distributing narcotics from an apartment located on the sixteenth floor of a building of Audubon Avenue in the Washington Heights neighborhood of Manhattan ("Apartment-1"). On December 7, 2023, law enforcement officers searched Apartment-1 pursuant to a search warrant. During the course of that search, they found several plastic bags containing hundreds, if not thousands, of pills and approximately 350 grams of white and tan powders. Both the pills and the powders have field tested positive for the presence of fentanyl. The pills and the powders were concealed in an elaborate "trap," or hidden compartment, constructed in a wall of Apartment-1. A kilogram press, which is a device used to press powdered narcotics into kilogram quantity bricks, was also found in Apartment-1.

## The Security Camera Footage

8. Based on my review of security camera footage of the hallway outside Apartment-1 over the past several months, including footage for the October and November 2023 time period, I have learned the following:

    a. No one appears to stay overnight in Apartment-1. I have not, for example, observed someone entering Apartment-1 in the evening and then leaving Apartment-1 the next morning.

        b.     Apartment-1 is frequented by individuals throughout the day. These individuals do not generally stay in Apartment-1 for a long period of time, often entering and exiting within minutes. When individuals leave Apartment-1, they are often seen leaving with bags that they were not carrying when they entered Apartment-1.

        c.     CHRISTIAN ROSADO GARCIA, the defendant, can frequently be seen visiting Apartment-1, often multiple times per day. Other individuals often join ROSADO GARCIA in Apartment-1.

        d.     For example, security camera footage from on or about November 14, 2023, reveals that for almost the entirety of the day, no one entered or exited Apartment-1. At approximately 6:53 p.m., however, three men, one of whom appears to be ROSADO GARCIA, entered Apartment-1. At approximately 6:57 p.m., one of the men left Apartment-1. At approximately 7:17 p.m., ROSADO GARCIA and the third person left Apartment-1. For the rest of the evening no one entered or left Apartment-1.

        e.     Similarly, security camera footage from on or about November 23, 2023, reveals that for almost the entirety of the day, no one entered or left Apartment-1. At approximately 5:36 p.m., however, two men, one of whom appears to be ROSADO GARCIA, entered Apartment-1. The men stayed in Apartment-1 for approximately 10 minutes before leaving. For the rest of the evening no one entered or left Apartment-1.

        f.     Based on my training and experience, I am aware that the foregoing is consistent with an apartment that is being used as a "stash house." That is, a residence primarily used for storing and preparing narcotics.

### The December 7, 2023 Search

9.     Based on my participation in this investigation, and conversations I have had with other law enforcement officers, I know the following:

        a.     On or about December 7, 2023, at approximately 8:00 p.m., law enforcement officers watching a live feed of the security camera footage for the hallway outside of Apartment-1 observed CHRISTIAN ROSADO GARCIA and LUIS PAULINO, the defendants, enter Apartment-1. Approximately five minutes after ROSADO GARCIA and PAULINO entered Apartment-1, law enforcement officers entered Apartment-1 to execute a search warrant.

        b.     Upon entering Apartment-1, law enforcement officers observed ROSADO GARCIA and PAULINO on a couch in the living room of Apartment-1. Law enforcement officers also observed an open hidden compartment, or "trap," open in one of the living room walls, several feet from the defendants. The trap was camouflaged using a mural painted on the wall. A chair was positioned under the trap in a way that would allow one to access the trap (which was located near the ceiling) by standing on the chair. The trap is pictured below.




c.  The panel used to cover the opening to the trap was located on a couch in the living room adjacent to the couch on which the defendants were sitting. Next to the trap was a plunger. The panel and plunger are pictured below.



d. A search of the trap revealed plastic bags containing both white and tan powders and small, blue pills. Both the powders and the pills field tested positive for fentanyl. In total, the bags contained over 600 grams of narcotics in both powder and pressed form. The recovered narcotics are pictured below.

 

e. Additionally, ROSADO GARCIA had a small bag of blue pills in the pocket of his pants.

f. During the search of Apartment-1, law enforcement officers also located a kilogram press in a bedroom closet, and pinhole camera equipment – that is, a very small video device that is easily concealed – installed on the front door of Apartment-1 in a manner consistent with the camera being used to surveil the hallway outside of Apartment-1.

g. Only very limited clothing and personal items were found in Apartment-1, and almost no food was found in the kitchen, which is consistent with Apartment-1 being used as a stash house.

h. As law enforcement officers were searching Apartment-1, ROSADO GARCIA stated, in sum and substance, that law enforcement officers had located all of the narcotics stored in the trap, that the motorization on the trap did not work like it used to, and that, as a result, ROSADO GARCIA had to use a plunger to open the trap.

10. Based on my participation in this investigation, I know that following his arrest and after being informed of his *Miranda* rights, LUIS PAULINO, the defendant, told law enforcement officers that he and CHRISTIAN ROSADO GARCIA, the defendant, had gone to Apartment-1 in order to do cocaine together. No cocaine, however, was found in Apartment-1.

WHEREFORE, I respectfully request that CHRISTIAN ROSADO GARCIA and LUIS PAULINO, the defendants, be imprisoned or bailed, as the case may be.

SHAUN MENTON
Task Force Officer
Drug Enforcement Administration

Sworn to before me
this 8th day of December, 2023.

THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York